IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY,

## AT FEBRUARY TERM, 1876.

---

JOHN L. DOUGLASS AND WILLIAM R. BLEWETT v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF ESSEX.

1. When the words of a statute and their meaning are clear, and they are not rendered dubious by the context, they cannot be controlled by judicial construction.
2. The charter of Belleville construed in several particulars.

---

On application for *mandamus*.

Argued at November Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the relators, *Joel Parker*.

Contra, *John W. Taylor*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This is an application for a *mandamus* to order the chosen freeholders of the county of Essex to admit the relators into their board.

Douglass v. Chosen Freeholders of Essex Co.

The relators, in asking this assistance, rest their claim on two grounds. *First*—That they, severally, were duly chosen to the office of chosen freeholder at an election held in the city of Belleville in April, 1875. *Second*—That they were appointed to the same office by the common council of the same city, in the month of May in the same year.

*First*—With regard to this alleged title by election. The case before the court shows clearly that these claimants were, at the time specified, duly voted into the office in question. Upon this point no question is made by the respondents, but the objection taken is, that the law requires these officers to be sworn into office within a limited time, and that the relators did not comply with this mandate. This subject is regulated by the charter of the city of Belleville, enacted in the year 1874. (*Pamph. L.* 674.) The twenty-second section is the pertinent one, and it is in these words, viz.: " That no person elected or appointed to any office, in pursuance of this act, or any law or ordinance of the board of councilmen, shall enter upon the discharge of his duties, unless within twenty days after his election or appointment he shall take and subscribe, before the mayor or city clerk, or some other person authorized to administer oaths, an oath or affirmation, faithfully, fairly and impartially to execute the duties of his office, according to the best of his knowledge, skill and ability, and shall file said oath or affirmation with the city clerk, who shall keep all such oaths or affirmations on file in his office, and the oath of the city clerk shall be filed by the mayor; and if any such person shall neglect to take such oath or affirmation for twenty days after his election or appointment, or shall neglect within such twenty days to give such security as may be required of him, he shall be considered as having declined said office, and the same shall be deemed vacant."

It is admitted that neither of the relators was sworn into office within twenty days after his election, the oath being taken and filed within a few days after such period.

The first attempt to mend this flaw in the title of the relators, was by arguing that the chosen freeholders were not among the officers who are required to be sworn by virtue of the section just recited. The reasoning in support of this idea went upon the ground that chosen freeholders elsewhere throughout the state are not required to take an oath, and that it would be preposterous to suppose that it was the intention to exact this guarantee of good conduct from this particular set of officials. But a seriousness is attached to this discrimination which is misplaced. There is no sound reason why the freeholders chosen in this place should not act under the sanction of an oath, if the inhabitants of this city desire it. It can certainly do the officers themselves no harm, if they act faithfully; nor is it in the least apparent how it is to incommode either their own action or the action of the board. They can build a county bridge, or review the laying of a public road, or in other ways disburse the moneys in their hands quite as judiciously as though they were uncontrolled by this unusual obligation. Some persons may think the distinction between members of the same body requiring some of them to be sworn, while the others are dispensed from such formality, is to be deprecated; but this is a mere affair of sentiment, and it gives no ground for the assumption that the requirement leads to a result either absurd or inconvenient. But, placing the question in a legal light, all these considerations in their present connection, are of no weight whatever, for the law-makers, with respect to the point involved, have expressed their purpose in language so plain that no argument derived from induction can be of any avail. Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place. It is no province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense, so that even if in this case it could be demonstrated that the regulation in question was incommodious, or even hurtful, an

appeal for relief to the judicial power would be utterly in vain. This enactment declares that no person elected in pursuance of it shall enter upon the discharge of his duties, unless he shall take an oath within twenty days after his election. The chosen freeholders are elected in pursuance of this charter, as much as the mayor of the city is. It is impossible, naturally, to deny that this expression is plain and certain, or that it embraces these officers—the relators—and this being so, the inquiry is ended.

But in the next place it was urged, that this requirement fixing the time in which the official oath is to be taken, is not mandatory, but is merely directory. This question, when a statutory designation of time, with respect to the doing of an act, will be considered material to the legislative purpose, or when not, was fully considered by this court in the case of the *Proprietors of the Morris Aqueduct* ads. *Jones,* reported in 7 *Vroom* 206. The general rule there propounded is, that the prescription of the time in a statute is material, unless an intent is clearly evinced from the nature of the act to be done or the general purport of the law, that it was not so intended. The application of this rule obviously leads to the conclusion that this limit of time in this act is mandatory, and must be submitted to. The whole section is framed for the purpose of giving it such efficacy, and to ask the court to disregard the injunction as to time is, in substance, to ask the court to draw a pen through the entire section. Where the statute has said that one of these officers shall " not enter upon the discharge of his duties, unless within twenty days after his election," &c., he shall take and subscribe an oath, it would be a simple usurpation of power for the court to say that he may enter upon the discharge of such duty upon taking an oath after the lapse of the period designated. The time set is a reasonable one; to conform to it is not even inconvenient; I can see no color of reason for refusing obedience to such a direction. No adjudication which was cited, or which I have seen, affords any countenance for the rejection of such a regulation.

The relators forfeited their right to claim their office under

their election, by reason of their neglect to become qualified in accordance with this provision of the charter of the city.

We come, then, to the *second* ground of the relators' case; their claim to the office in question by the appointment of the common council of the city of Belleville.

It is shown that the relators first claimed their office by election, and that this title being rejected by the board of chosen freeholders, they were, subsequently, appointed to the same office by the council. Neither this fact, nor the regularity of the proceedings attending it, are in dispute. The respondents meet this part of the case with a denial of the right of the council to fill, under the circumstances disclosed, the office.

The ninth section of the city charter declares " that in case any vacancy shall occur in any of the city or ward offices, by resignation, disqualification, or death of the incumbent of said office, or in any other manner whatsoever (except in the office of mayor, recorder or councilmen, or in the board of education,) the board of councilmen shall fill, by appointment, such office for the unexpired portion of the term."

By the third section of the charter, the chosen freeholders are expressly declared to be city officers, so that they are, undeniably, within the operation of the section just cited. Nor is this gainsayed, but the respondents insist that the office of chosen freeholder, in neither of these cases, was vacant, and consequently that it was not within the competency of the council to fill it. This contention is sought to be justified by a reference to the twelfth section of the law incorporating the townships, which provides for the election of chosen freeholders in the townships, and which declares that such officers " shall hold their respective offices for one year, and until others shall be chosen and legally qualified in their stead." The predecessors of the relators were township officers, and it was argued that as these officers, under this section, were authorized to hold over until their successors have been not only chosen but duly qualified; that on the failure of the relators to take their oath within the prescribed

period, the office did not become vacant. This reasoning would be conclusive if the charter of the city had merely required the chosen freeholders to be sworn into office within a specified time. By force of such a provision, on their neglect to become qualified, the councilman could not have filled the office, and this on the manifest ground that such office would not have been vacant, because these township officers holding over would have filled it. This is the theory on which all the cases cited by counsel are placed. But there is another fact in this case which differs it from those embraced in these decisions. The city charter not only says that if these officers do not qualify in the time appointed, they shall be considered as having declined the office, but it further says that, on their failure to do so, the office shall be deemed vacant. Here again the clear expression of the legislative will must rule. Instead of the old officers holding over, the scheme here introduced is where a freeholder has been elected in the city to provide that if he does not duly qualify himself, new freeholders, to be appointed by the councilmen, shall take the place thus made vacant. It was entirely competent for the legislature to say, in the event of the non-qualification of the newly chosen officers, that the old officers should hold over, or that the office should become vacant, and the latter course has been adopted. It is impossible for the court to say that this office is to be deemed filled, when the legislature has said that it shall be deemed vacant. The claim that the relators make to this office appears to me, on this latter ground, to be unimpeachable.

And in coming to this result, I have not overlooked the ingenious comments made by the counsel of the respondents, on the clause in this charter which gives to the council the power to fill vacancies. That clause says that " the board of councilmen shall fill by appointment, such office for the unexpired portion of the term," and this expression, it was argued, denoted that the provision applied only to an office that had been entered upon and had partly run out. The expression is not felicitous, and, at first view, seems to give a

color to this construction.  But upon a more careful reading of the passage, it becomes evident that such was not the legislative intent.   The direction to fill the vacant office is general ; the councilmen are to do that act in all cases, except in those enumerated ; and the expression " for the unexpired portion of the term," is used solely for the purpose of denoting the length of time for which the appointed officer is to hold the office.   The end here in view was to make the official term of the appointed officer terminate at the same period at which the term of the elected officer would have terminated.   This interpretation fairly satisfies the statutory language, and carries into effect the general intent of the clause which was to provide a mode of filling all vacancies, except with regard to certain offices which are specified.  The opposite exposition of this section would bring into the municipal scheme defects and imperfections in important particulars.   Unless vacancies arising from death, non-qualification, or refusal to serve, happening before the person elected takes possession of his office can be filled by the council, the disastrous result is that many of the more important of the city and ward offices must remain vacant, on the happening of such events, for the year, as there is no provision authorizing an election in these cases.   It is perfectly obvious, therefore, that the primary idea in this section is to clothe the council with a general authority to fill all vacancies, except in the particularized cases, and upon well-known principles, the construction of the language must be made subservient to this plan thus clearly intended.

The writ, as prayed for, should be issued.