LONG DOCK COMPANY, APPELLANT, v. STATE BOARD OF ASSESSORS, RESPONDENT.

Argued July 1, 1914—Decided November 16, 1914.

1. Under the Railroad Tax act it is the duty of the Supreme Court upon *certiorari* to give relief as well in cases where the amount of the tax is excessive or insufficient as in cases where the principle upon which the assessment is made is erroneous.

2. Where in a railroad tax case the evidence as to value is conflicting, the court properly refuses to interfere with the decision of the state board of assessors who may have decided upon the weight and value of the evidence before them in the light of

their own knowledge, as jurors may and as the statute permits, but where all the evidence is for a valuation very much lower than that fixed by the board, and the board has added twenty per cent. to the valuations on which the expert witnesses were in substantial accord, there is presented a case of palpable error, which requires the court to set aside the assessment.

3. A certificate by the state board of assessors is not the proper way to ascertain their knowledge of the value of railroad property; the board as a board may certify its official findings, but not the individual knowledge of each member. The important distinction is that between evidential facts and facts inferred therefrom.

4. The legislature, by making the knowledge of members of the state board of assessors evidential and providing for a review by the court of the amount of the tax and the excessiveness or insufficiency of the assessment, has by the necessity of the case provided for taking of the testimony of members of the board, since there cannot be such review unless all the facts before the board are presented to the court.

5. The hearing in a railroad tax case provided by the legislature must be a real not a sham, hearing; the taxpayer has the right to support his allegations, if need be, by proof; to determine whether there is need of proof, he must know what he has to meet; hence, he has the right to know what knowledge the individual members of the state board of assessors had upon which to base their valuation, and for that purpose to call the members of the board as witnesses and cross-examine them as to their individual knowledge of facts, but not as to the method by which the board reached its result.

---

On appeal from the Supreme Court, whose opinion is reported in 85 *N. J. L.* 536.

For the appellant, *Robert J. Bain* (*Gilbert Collins* and *George S. Hobart* on the brief).

For the respondent, *Josiah Stryker* (*John W. Wescott,* attorney-general, on the brief).

The opinion of the court was delivered by

SWAYZE, J. The Supreme Court held that it would not in settling the question of fair value oppose its judgment to that of an administrative board entrusted by law with the duty of fixing the fair value or market value of land for the purpose of assessing the same for taxes, where there was testimony be-

fore the board the weight and value of which it was required
to determine, to which the members of the board might add
their individual personal knowledge and judgment. The por-
tion of the opinion thus paraphrased treats the valuation of
the state board of assessors as if it were the judgment of a
judicial tribunal, and the Supreme Court a mere appellate
tribunal passing upon questions of law only. To leave no
doubt that such was the view taken by the court of its func-
tions, the opinion goes on to say that the court cannot super-
sede the judgment of the board with the court's own judgment
upon a practical question of methods of valuation, unless the
principle which has obtained be inherently and legally vicious
—an expression which must mean that the principle upon
which the state board of assessors proceeded may be inherently
vicious and yet cannot be corrected by the court unless it is
also legally vicious. We think the Supreme Court in adopt-
ing this view of its functions, and thereupon affirming the
assessment, failed to perform the duty which the statute im-
posed upon it. Section 13 of the act (*Comp. Stat., p. 5270,
pl. 457*) expressly enacts that upon a *certiorari* of the taxes
imposed by the state board, relief may be had as well in cases
where it is claimed that the amount of the tax is excessive or
insufficient, as in cases where it is claimed that the principle
upon which the assessment is made is erroneous, and if it
shall be made to appear that any assessment is unlawful, ex-
cessive or insufficient, the court shall correct the same and re-
duce or increase it as may be just, or refer it back to the board
of assessors, who shall correct or reassess the same in accord-
ance with the instructions of the court. The act then adds
that in any suit or proceeding, *except on such certiorari*, the
certificate of the state board shall be conclusive and have the
force and effect of a judgment of a court of record. If this
plain language left it at all doubtful that the court was to
consider the amount of the assessment as well as the legal
principles upon which the board acted, the doubt would be re-
moved by an examination of the state of the law at the time
the act was passed, as to review by the court of the
amount of tax assessments. The Railroad Tax act was passed

in 1884. At that time, the act of March 26th, 1852 (*Gen. Stat., p.* 3390), was in force. This act had been passed immediately after the Supreme Court had, in *State* v. *Quaife,* 23 *N. J. L.* 89, laid down the same doctrine as in the opinion now under review. It was no doubt passed to overcome the effect of that decision. Under the act of 1852, the court reviewed the valuation in tax cases and determined disputed questions of fact when the purpose of the investigation was the affirmance or the reversal, in whole or in part, of the tax imposed. The cases are collected in *Royal Manufacturing Co.* v. *Rahway,* 75 *Id.* 416. Such was the rule as to the review on *certiorari* of general taxes when the Railroad Tax act was enacted, and we cannot entertain a doubt that the legislature in its desire to avoid any question that the new legislation accorded to the railroad companies the equal protection of the laws, gave them the same right to review by the Supreme Court that was accorded to other taxpayers by the act of 1852. Our decisions prior to the present case are in accord with this view. In the first case, *Central Railroad Co.* v. *State Board of Assessors,* 49 *Id.* 1, Chief Justice Beasley, with his usual accuracy, stated the somewhat peculiar situation created by other provisions of the act. He said: "We do not consider that we have the right to alter or annul any of the proceedings of this body of officers except for palpable error, for it is not to be overlooked that the statute in question expressly declares that these assessors shall be entitled to use their personal knowledge and judgment as to the value of property, a capacity with which this court is not endowed by the legislature." That the Chief Justice by the expression "palpable error" referred not to mere legal error, but to error in the valuation, is apparent from the fact that it was the valuation only that he was for the moment discussing; the sentence immediately preceding the passage we have quoted is: "We can perceive nothing in the facts before us that would justify us in interfering with valuations of this class." He was passing upon the facts of the case and not upon the legal principles adopted by the state board. What he held was that the court would not alter the assessment *except* for palpable error, which is

equivalent to saying that it would do so if palpable error appeared. The exception proves the rule. This palpable error did not appear in that case since the prosecutors failed to show that the valuation might not be justified by the personal knowledge of members of the state board, which the court did not possess. The recent opinion, cited below, on the valuation of the very property now in question, is in entire accord with Chief Justice Beasley's opinion. In *Long Dock Co.* v. *State Board of Assessors,* 82 *Id.* 21, Mr. Justice Garrison, after saying that there was testimony supporting the valuation of the state board and testimony opposed thereto, added: "We are unable to say that the latter testimony so preponderates as to overcome the judgment of the board, and the testimony that supports it, as to make it our clear duty to substitute our judgment for that of the state board upon a question of value." To make it still more clear that he was dealing only with the weight of evidence, he continued: "If it were a question of law, our opinion might be of more worth than that of an administrative board, but upon a question of value, the presumption is rather the other way." This was a recognition of the duty of the court to consider the facts as to valuation in accordance with the statutory direction; the court was very far from limiting its function to a consideration of the legal principles on which the board had acted. In both cases the court dealt with the weight of evidence on the question of valuation, properly requiring that the evidence should preponderate against the valuation of the state board before it was set aside. We are not without precedent in this court. The question is the same that arises under the General Tax act; we have held that it is the duty of the Supreme Court under that act to reweigh the evidence and amend the assessment when satisfied that the valuation of the taxable property for which the taxpayer is assessed is erroneous. *Millville Gaslight Co.* v. *Millville,* 84 *Id.* 409. In the pending case the opinion makes it clear that the court did not reweigh the evidence but limited itself to a review of the legal principles on which the state board had acted. But on that narrow ground, also, there was error. It is well recognized and on the plainest principles of

justice that the judgment, even of a court, is legally erroneous if there is no evidence to support it, since without evidence the judgment is no better than an arbitrary edict. In the present case, the state board added twenty per cent., amounting in the aggregate to nearly or quite a million dollars to the valuations on which the experts on both sides were in substantial accord. There was no evidence to support this addition since the court did not even assume that members of the board possessed knowledge not possessed by the experts, but spoke only of considerations *"probably* within the personal knowledge of the assessors," a probability that was at best conjectural since the assessors refused to disclose whether or not they had any means of knowledge or familiarity with the property they were valuing. The question of the value of railroad property is a highly technical one for experts, and the state had, in 1909, for the information of the people of the state and the state board of assessors, as the preamble of the resolution declares, employed such experts. There was no presumption in the mind of the legislature that members of the board would know more than the experts and the court ought not to assume such to be the fact without proof. Where there is conflicting evidence, the court may properly refuse to interfere with the decision of the state board who may have decided upon the weight and value of the evidence before them in the light of their own knowledge, whatever it may have been, as jurors may and as the statute permits. Such seems to have been the situation in the cases cited. The present case is very different. There is no evidence here to sustain the valuation adopted by the board. All the evidence is for a valuation many hundred thousand dollars lower. In this situation there is presented the very case of "palpable error" in the valuation to which Chief Justice Beasley referred. If the board was possessed of knowledge justifying the valuation it adopted, that knowledge was not brought to the attention of the Supreme Court and does not appear on the record. It is urged that it was the duty of the prosecutors to call upon the board to certify to their knowledge. To this there are two answers—*first*, the prosecutors might well rest

content with the evidence as to value, and *second,* a certificate by the board is not the proper way to ascertain their knowledge. The prosecutors might rest content since the highest value that is testified to is far below the valuation fixed by the board. A certificate by the board is not the proper way to ascertain their knowledge, because knowledge of values is the individual possession of each member and doubtless differs with each, as is sufficiently shown by remarks made by one member of the board during the colloquy at the hearing. The board as a board may certify its official findings, but not the individual knowledge of each member. That individual knowledge differs in no essential respect from the knowledge of the expert witnesses; it may prove more or less valuable when subjected to the same tests. The knowledge of both alike is a fact to be considered by the board in making up its judgment. The important distinction is that between evidential facts and facts inferred therefrom. The mental process by which the board makes its inferences and reaches its conclusions is no more open to inquiry than the processes by which a jury reaches its verdict (*Chicago B. and Q. Ry. Co.* v. *Babcock,* 204 *U. S.* 585), but the evidential facts on which the finding and judgment of the board rests are as open to inquiry as the facts proved before a jury, and none the less open in the one case than in the other, because those facts are within the knowledge of members of the board alone or in the knowledge of jurymen alone. The distinction is, in effect, the same that was pointed out by all the judges in the house of lords in *Duke of Buccleuch* v. *Metropolitan Board of Works, L. R.,* 5 *H. L.* 418; 41 *L. J. Exch.* 137. It was there held that the umpire was properly examined as a witness to ascertain whether he took into consideration matters not included in the reference and therefore not within his jurisdiction, but that the operations of his mind in reaching his award were not the proper subject of examination. A quotation from the opinion of Lord Chelmsford clearly expresses the distinction: "To prevent the defendants from questioning him so far, would have been to have deprived them of information to which they were entitled by shutting them off from the only source of it

in the breast of the umpire. He alone could tell what subjects he included under the general terms of his award. But this having been ascertained, the defendants were not at liberty to go further and to ask the umpire what were the elements which entered into his consideration in determining the question of compensation." The only way to ascertain the knowledge of members of the board was either by calling on each to certify individually—a proceeding for which there is, we think, no precedent—or by examining each as a witness. The case is analogous to cases where jurymen may be examined as witnesses to facts but are not to be examined as to the mental processes by which they draw inferences from those facts and arrive at a verdict. There was indeed a time in the history of trial by jury when jurors were allowed to avail themselves of one another's knowledge without disclosing it in the open; but that was at a time when the jurors were still witnesses and not triers. Prof. Thayer deals with the question in his Preliminary Treatise, page 168, and an interesting history is to be found in Wigmore, section 1800. In 1650, it was laid down that a juror ought to state publicly in court on oath his information and not give it in private to his companions. *Bennett* v. *Hartford, Style* 233, cited in *Thayer* 174. Blackstone (3 *Bl. Com.* 375) refers to the same case as having first introduced the rule "which now universally obtains that if a juror knows anything of the matter in issue, he may be sworn as a witness and give his evidence publicly in court." The rule appears in the very first volume of our reports *Anderson* v. *Barnes,* 1 *N. J. L.* 203, and is enacted in section 158 of the Practice act. *Comp. Stat., p.* 4103. The same rule applies to a judge. *Wigm.,* §§ 1805, 1909. We see no reason why the members of the state board should be exempt from testifying. Whether the members shall be required to testify to their knowledge under the sanction of an oath and with the usual safeguard of cross-examination depends upon the rules of our law in analogous cases. It is true the members of the state board were neither judges nor jurors. They were acting in a double capacity, first, as assessors who had made an assessment against which a complaint had been made,

and second, as commissioners of appeal sitting to review the assessment upon testimony to be subsequently reviewed by the Supreme Court. As assessors they were in no better position than commissioners of assessment who are examined and cross-examined as to special assessments as a matter of everyday practice. While the state board are neither jurors nor judges, the importance of the comparison lies in the fact that the rule applied since 1650 to jurors, and perhaps for an even longer time to judges, illustrates the fundamental principle that a hearing in order to comply with the law, must be a hearing at which adverse witnesses may be met and cross-examined. Our law is careful to secure, as Blackstone says, that evidence of facts shall be given publicly in court. The right to cross-examine witnesses as to facts is of the very essence of civilized judicial procedure, and there is no rule exempting from cross-examination witnesses who happen to be jurors also. Even judges are not exempt. *Wigm., supra.* One of the reasons given for exempting judges from the obligations of witnesses in their own courts is the difficulty of their presiding at their own cross-examination. This difficulty is not insuperable. If it were, the courts would be subject to the mocking question of Henry the Fourth to one of his judges as to the procedure if the judge were the sole witness of a murder. The legislature has power to provide for the taking of testimony of witnesses who happen also to be members of the tribunal. It has necessarily done so in this case by making the knowledge of members of the board evidential, and providing for a review by the court of the amount of the tax and the excessiveness or insufficiency of the assessment. There can be no such review unless all the facts before the board are presented to the court. The legislature has taken pains also to provide for a hearing, for process of subpœna and for the examination of witnesses. *Comp. Stat., p. 5270, pl. 456.* A hearing must be a real, not a sham, hearing. *Central of Georgia Railway* v. *Wright,* 207 *U. S.* 127; *Londoner* v. *Denver,* 210 *Id.* 373; *Interstate Commerce Com.* v. *Louisville and N. R. Co.,* 227 *Id.* 88; *Erie Railroad Co.* v. *Paterson,* 79 *N. J. L.* 512. Even in a tax case, said the court

in Londoner *v.* Denver, a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument, however brief, and, if need be, by proof, however informal. In order to determine whether there is need of proof on his part, the taxpayer must know what he has to meet. It is not consistent with the methods of judicial tribunals nor of special tribunals seeking to do justice, to give the taxpayer no chance to know what the case made against him may be. In this case, the members must have stated to each other in secret session their knowledge of the value of this property unless they merely added the twenty per cent. in an arbitrary way—a procedure we cannot impute to them. Such a statement of the individual knowledge of each differs in no essential respect from testimony as to other facts except in its secrecy, in its lacking the sanction of an oath, and its freedom from the safeguard of cross-examination. So open to abuse is such a method, so lacking in the ordinary requirements of a hearing, that we may safely say that no man's property is safe from confiscation if taxing boards can without evidence and behind closed doors add twenty per cent. to a valuation on which sworn experts on both sides are in substantial agreement. If twenty per cent. can be added in this way, a thousand per cent. can be added, and the redress through the open public methods of a judicial tribunal which the legislature has been careful to provide becomes a mere delusion and the legislative intent is frustrated. We cannot sanction acts of a mere administrative board which run counter to the legislative will as expressed in the very statute from which the board derives its powers. If we did, those acts might be treated by the federal courts as a violation by the state itself of the provisions of the fourteenth amendment. *Raymond* v. *Chicago Traction Co.,* 207 *U. S.* 20; *Home Tel. and Tel. Co.* v. *Los Angeles,* 227 *Id.* 278. The observance by the state of its obligations under the federal constitution is in the keeping of the legislature and the courts, not in that of its administrative boards.

In view of the care taken by the legislature to secure a hearing to the railroad companies, we need not deal with the

question raised at the argument as to the requirements of due process of law under the federal constitution. The state has provided for due process of law. We have not, it is true, adopted in civil as we have in criminal cases, a constitutional guaranty, requiring that a man be confronted with witnesses against him; we have found that the legislature and the courts sufficed to protect the citizen without the constitutional guaranty. We have always had in civil cases what is essential in the right of confrontation, *i. e.,* the right of cross-examination. *Wigm.,* § 1395. Without this right, a hearing is a sham.

It was suggested in the colloquy during the effort to take testimony that the practice under the Railroad Tax act from the very beginning had been for members of the board to refuse to give the information here sought. The authority cited is advice given by counsel for the state to a member of the board on the hearing of the original case. *Central Railroad Co. v. State Board of Assessors,* 48 *N. J. L.* 1. We are not advised whether the inquiry in that case was directed to the method by which the board reached its result or to the knowledge of the individual members. If to the former, the authority is not in point; if to the latter, we can only say that advice of counsel for a litigant to a witness can hardly be treated as authority by a court; however eminent the counsel may be as a lawyer, the attitude and duty of an advocate are very different, and rightly different, from the attitude and duty of a court.

The judgment must be reversed, and the record remitted to the Supreme Court for further proceedings not inconsistent with this opinion.

*For affirmance*—BLACK, J.   1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, BOGERT, VREDENBURGH, WILLIAMS, JJ.   8.