UNITED NEW JERSEY RAILROAD AND CANAL COMPANY; THE PENNSYLVANIA RAILROAD COMPANY, LESSEE; LONG DOCK COMPANY; ERIE RAILROAD COMPANY, LESSEE; DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, RESPONDENTS, v. STATE BOARD OF TAXES AND ASSESSMENT, NEWTON A. K. BUGBEE, COMPTROLLER, ETC., APPELLANTS.

Argued March 10, 1924—Decided May 19, 1924.

1. Judgments of the Supreme Court fixing different valuations for the assessment of property for taxation from that of the state board of taxes and assessment must be based upon evidence to be sustained.

United New Jersey, &c., Co. v. State Board, &c. *100 N. J. L.*

2. The assessment of property by the state board of taxes and assessment should not be set aside, when supported by evidence, except for palpable error. The words in the statute, "using their personal knowledge and judgment," applied. 4 *Comp. Stat. of N. J., p.* 5272, § 16; *Pamph. L.* 1888, *p.* 280.

On appeal from the Supreme Court.

For the respondents, *Wall, Haight, Carey & Hartpence, Collins & Corbin* and *Maximilian M. Stallman.*

For the appellants, *Edward P. Stout.*

The opinion of the court was delivered by

BLACK, J. The appeal in these cases is from judgments entered in the Supreme Court. That court reduced the assessment for taxation for the year 1922 on fourteen pieces of property of the prosecutors. The properties are located in Jersey City and Hoboken, facing the Hudson river. They are the terminal lands of the prosecutors. In general terms, they are bounded on the east by the Hudson river, on the west by Greene, Provost and Henderson streets. Henderson street runs from Jersey City to Hoboken. On the south by Exchange place, Montgomery street and Second street, in Jersey City. On the north by Perry street, in Hoboken. The portal of the vehicular subway now building is within the above bounds, at Prevost, Twelfth and Henderson streets.

The properties assessed may be shortly described or identified thus:

The properties of the United New Jersey Railroad and Canal Company, the Pennsylvania Railroad Company, lessee, are—

First. Area 12.731 acres, assessed at $20,000 per acre; total, $254,620, reduced to $203,696. If this plot is in case No. 62, New York Bay Railroad Company, it is affirmed. There is some confusion in the record as to its location.

Second. Area 30.564 acres, assessed at $95,000 per acre; total, $2,903,580, reduced to $2,682,908.

Third. Area 3.623 acres, assessed at $95,000 per acre; total, $344,185, reduced to.$318,026.

Fourth. Area 98.835 acres, assessed at $88,100 per acre; total, $8,707,363, reduced to $7,412,625.

Fifth. Area 6.682 acres, assessed at $88,100 per acre; total, $588,684, reduced to $501,150.

The properties of the Long Dock Company, the Erie Railroad Company, lessee, are—

First. Area 16.555 acres, assessed at $87,000 per acre; total, $1,440,285, reduced to $1,251,625.

Second. Area 67.830 acres, assessed at $90,000 per acre; total, $6,104,700, reduced to $5,087,250.

Third. Area 2.816 acres, assessed at $90,000 per acre; total, $253,440, reduced to $211,200.

Fourth. Area 3.164 acres, assessed at $90,000 per acre; total, $284,760, reduced to $237,300.

The properties of the Delaware, Lackawanna and Western Railroad Company are—

First. Area 131.840 acres, assessed at $95,000 per acre; total, $12,524,800, reduced to $10,547,200.

Second. Area 40.068 acres, assessed at $96,000 per acre; total, $3,846,528, reduced to $3,205,440.

Third. Area 1.525 acres, assessed at $75,000 per acre; total, $114,375, reduced to $99,125.

Fourth. Area 3.240 acres, assessed at $95,000 per acre; total, $307,800, reduced to $275,400.

Fifth. Area 3.728 acres, assessed at $96,000 per acre; total, $357,888, reduced to $316,880.

The assessments on the fourteen pieces of property for the year 1922 totaled $38,033,008. The assessments made by the Supreme Court totaled $32,339,825, a reduction of $5,-693,187.

The legal principles underlying the assessment of property for taxation are no longer debatable questions in this court. They have been examined, re-asserted and applied by this court and the Supreme Court in many cases, involving these identical properties, since the act of 1884, which created a special board of assessors for valuing this class of property.

Cases illustrating these principles applied to this class of property under discussion are: .*Long Dock Co.* v. *State Board of Assessors*, 86 *N. J. L.* 592; *Long Dock Co.* v. *State Board of Assessors*, 89 *Id.* 108; *Central Railroad Co.* v. *State Board of Assessors*, 49 *Id.* 1; 48 *Id.* 146. Many other cases in our reports will there be found collected and cited.

The only question that is presented to us for decision in the record of these cases is, Is there evidence to support the findings of fact made by the Supreme Court? *Long Dock Co.* v. *State Board of Taxes and Assessment*, 90 *N. J. L.* 701; *Delaware, Lackawanna and Western Railroad Co.* v. *Newark,* 63 *Id.* 310.

We think there is no evidence to support the findings of fact made by the Supreme Court. The Supreme Court, in its opinion, does not state the evidence from the record, on which its findings are based. It, however, does recite, as a reason, why the reductions were made, referring to the Erie group, "we still are unable to agree that such great advances in one year are fairly supported by the evidence," and "in the Lackawanna group a somewhat similar disposition will be made." "What we have said about the adjoining Erie tracts" is applicable to the Pennsylvania group. This, however, is not a ground for reversing these judgments, if there is evidence to be found in the record to support them, although not recited by that court in its opinion. The record is voluminous, consisting of three large volumes, making a record of eighteen hundred and sixteen pages.

We proceed, therefore, to analyze the evidence, as shown by the record. Like all cases in which evidence is presented for the purpose of determining or fixing the value of a given piece of real estate, at any given time, when not offered for sale, such evidence is divided generally into two classes—sales of other lands and testimony of expert witnesses. To use the words of the prosecutors' brief, the sales evidence is thus summarized, according to the schedule of sales and the testimony; twenty-five per cent. of the Hudson river frontage in Hudson county was sold between the years 1915 and 1921. The sales were lands in Jersey City, Hoboken, Weehawken

and North Bergen. There were twelve sales, and the highest prices ranged from $54,227 to $68,200 per acre. The lands of the prosecutors on the river in Hoboken and Jersey City were assessed by the state board at from $87,000 to $96,000 per acre. It is quite evident, therefore, the Supreme Court could not have based its judgment solely upon a comparison of the prices of the lands sold, with the hypothetical prices of the market value of the lands under investigation. It may be observed, in passing, that Weehawken is at least a mile, if not further, from the nearest point to the lands now under investigation; North Bergen several times that distance. It is also clear that the lands assessed by reason of their use as railroad lands and large plots do not change hands in the open market, so that their market value can be ascertained by the usual method applicable to city lots. It is also clear that there have been no other lands of like acreage or use in the locality sold in the open market from time to time, to which the market value of these lands can be compared. The criterion established of market value is a hypothetical sale; hence, the would-be buyers are hypothetical buyers, not actual and existing purchasers. *Turnley* v. *City of Elizabeth,* 76 *N. J. L.* 42.

The prosecutors called four expert witnesses to testify. The state called three expert witnesses to testify. In the United New Jersey Railroad and Canal group the highest valuation fixed by the prosecutors' experts were one witness Huntley, the 30.564-acre tract at $80,000 per acre (record, page 48), the other witness $75,000 per acre. As to the 3.623-acre tract, the four witnesses fixed the value at $80,-000. Record, page 49. Seventy thousand dollars per acre was the next highest value. Then $65,000, and so on, below that figure. In the Long Dock group, $70,500 by one witness as to one piece was the highest figure; the next was $65,-000 per acre, and other estimations below that figure. In the Delaware, Lackawanna and Western Railroad Company group $65,000 per acre (record, page 49) is the highest value of the prosecutors' experts. Ryer says $70,800 per acre for part, $45,740 for part of the same tract. Record, page 396.

The values testified to by the experts are made into schedules and exhibits at page 1660 *et seq.*, of the record, and a like schedule of Hudson river water front sales. *Exhibit P 24*, page 1722.

With these factors, sales of property and evidence of expert witnesses, what are the conclusions to be drawn in terms of valuation; by what tribunal are they to be drawn, and what method of comparison is to be applied. These are the problems presented for solution.

A legal result cannot be reached simply on the basis of an increase in assessments for one year, which seems to be large, or because the average increase of the assessments under investigation with other property is estimated at forty-two per cent.

In the case of the *Central Railroad Co.* v. *State Board of Assessors,* 49 *N. J. L.* 1, 9, Chief Justice Beasley, speaking for the Supreme Court, said: "We do not consider that we have the right to alter or annul any of the proceedings of this body of officers, except for palpable error, for it is not to be overlooked that the statute in question expressly declares that these assessors 'shall be entitled to use their personal knowledge and judgment as to the value of property,' a capacity with which this court is not endowed by the legislalature." The legislature must have intended these words in the statute to have a meaning and purpose.

It is quite obvious in reading this bewildering and confusing record what that purpose was. The board should use the personal knowledge and judgment gained by experience, applying this to the evidence and to the unusual plotting and location of the lands under investigation, in their relation to other lands, the sale price of which is offered in evidence for comparison and on which the opinion of expert witnesses is based.

The courts cannot ignore the plain mandate of the statute, for, as was said, in the case of *Douglass* v. *Board of Chosen Freeholders,* 38 *N. J. L.* 216, it is no province of the courts to supervise legislation. The record in this case is an apt illustration of the wisdom of the legislature in inserting such

MARCH TERM, 1924. 137

*100 N. J. L.* United New Jersey, &c., Co. v. State Board, &c.

a provision in the statute. The conclusions of this board fixing valuations should not be set aside, except for palpable error, to use the words of Chief Justice Beasley. So, this court has said, in this class of cases, where the Supreme Court dealt with the weight of evidence on the question of valuation, it properly required that the evidence should preponderate against the valuation of the state board before it would be set aside. It is well recognized, and on the plainest principles of justice, that the judgment, even of a court, is legally erroneous, if there is no evidence to support it, since without evidence its judgment is no better than an arbitrary edict. This court then held, that the state board could not add twenty per cent. to the valuations on which the experts on both sides were in substantial accord arbitrarily and without evidence. *Long Dock Co.* v. *State Board of Assessors,* 86 *Id.* 592, 596. So, the personal knowledge and judgment possessed by the state board does not mean that something may be added to the valuations arbitrarily and without evidence. On the other hand, the effect of our adjudications is to require that, on review, the courts should not set aside the judgments of the state tribunal fixing valuations, which are based on evidence.

We have therefore judgments of the Supreme Court, which are sought to be sustained upon reasons stated by the court, which are unsatisfactory, if not entirely untenable. These are rested as to valuation at a point, where neither set of experts agree, and at a point somewhere between the high and low values fixed by the two sets of experts, the court, apparently, having overlooked the provision of the statute, which expressly declares that these assessors shall be entitled to use their personal knowledge and judgment in ascertaining from the evidence the value of the property assessed. 4 *Comp. Stat., p.* 5272, § 16; *Pamph. L.* 1888, *p.* 280.

We conclude, therefore, after considering this record, and for the reasons stated, that the judgments of the Supreme Court involved in these three groups on appeal are without legal evidence to support them. They are therefore set aside

and reversed, and the judgments of the state board of taxes and assessment are affirmed.

## DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY v. STATE BOARD OF TAXES AND ASSESSMENT.

GARDNER, J.  I vote to affirm on the opinion below with the exception of the reductions therein made as to parcels No. 2 of 40.068 acres, and No. 5 of 3.728 acres, as, in my judgment, there was no evidence to support the same.

## UNITED NEW JERSEY RAILROAD AND CANAL COMPANY v. STATE BOARD OF TAXES AND ASSESSMENT.

GARDNER, J.  I vote to affirm on the opinion below with the exception of the reduction therein made as to parcels No. 3 of 30.564 acres, and No. 4 of 3.623 acres, as, in my judgment, there was no evidence to support the same.

*For affirmance* — THE CHIEF JUSTICE, KATZENBACH, LLOYD, WHITE, GARDNER, JJ.   5.

*For reversal*—THE CHANCELLOR, MINTURN, KALISCH, BLACK, VAN BUSKIRK, CLARK, McGLENNON, JJ.   7.