STATE BOARD OF TAX APPEALS.

TOWN OF WEST ORANGE, PETITIONER, v. ESSEX COUNTY BOARD OF TAXATION ET AL., RESPONDENTS.

Decided June 7, 1940.

For the town of West Orange, *Gerald T. Foley.*

For Essex County Board of Taxation, *David T. Wilentz,* attorney-general (by *John Solan*).

For the city of Newark, *James F. X. O'Brien* (by *Vincent J. Casale*).

For the town of Montclair, *George S. Harris* (by *Joseph L. Lippman*).

For Cedar Grove township, *Samuel W. Boardman, Jr.*

For the borough of Caldwell, *Philip D. Elliott, Charles A. Thornton,* assessor, and *George W. VanderDecker,* treasurer.

For the borough of West Caldwell, *Alexander C. Martin,* secretary of the Tax Board.

For the town of Bloomfield, *O. G. Olsen,* assessor. ·

For the town of Irvington, *James McDonaugh,* assessor.

For the township of Maplewood, *A. E. Weiler,* assessor.

For the town of Nutley, *Henry Conover,* assessor.

QUINN, President.    Proceeding under the provisions of *R. S.* 54:2-37, the petitioner applies for review of the equalization table adopted by the Essex County Board of Taxation for the year 1940.    The petition of appeal herein was filed upon the sixth day of May, 1940, and the hearing held May 23d, 1940.    Under the statute, our review must be completed before June 10th, 1940.    In substance, the complaint of the petitioner, as maintained at the hearing and contended for in its brief, is that the table adopted by the county board is a nullity because of failure of compliance by that body with the applicable statutory directions contained in *R. S.* 54:3-17, 54:3-18 (*N. J. S. A.* 54:3-17, 54:3-18), and that it should therefore be set aside; that the valuations submitted to the county board by the taxing districts of Newark and Montclair, and confirmed by the board, represent radical reductions in the aggregate valuations from those of previous years, warranting an upward revision of such aggregates to such higher figures as may be determined to accord with the true value of their respective ratables, or, in the alternative, a reduction of the aggregate valuations of all of the taxing districts in

the county other than Montclair and Newark, to such lower figures as may be found to represent the true value thereof.

Before proceeding to a discussion of the facts involved, we deem it important to emphasize that under the statute controlling our functions in this appeal. *R. S.* 54:2-37 (*N. J. S. A.* 54:2-37), we cannot discharge our duties by any mere conclusion that the county board failed to make such an investigation of the lists of assessed ratables returned to it by the respective taxing districts as we might conceive it should have done, or that, under the circumstances, there is a probable or possible deviation between the several aggregates returned, and approved by the board, or any of them, and the corresponding true values of the respective ratables. We may not, for any such reasons, were they deemed established, set the equalization table aside, without more. The statute *correct the equalization table.* * * *"

"* * * if, after the hearing, the board shall determine that the aggregate valuation of any district or districts as fixed by the county board was erroneous, *it shall revise and correct the equalization table* * * *."

It is clearly implied that no action is to be taken by this board in the premises, unless, as a result of proof adduced at the hearing, coupled with such knowledge or experience, if any, as it may have with reference to the subject-matter in question (*Bayonne* v. *State Board of Tax Appeals* (*Supreme Court,* 1935), 13 *N. J. Mis. R.* 334; 178 *Atl. Rep.* 177), it is able to say, as a matter of its own determination, what the true value of the property in the questioned duplicates should be, for purposes of revising and correcting the equalization table. The law envisages a culmination of the appeal such as will result in a final determination of the correct table, and not a mere setting aside of the table approved by the county board, unaccompanied by corrective action by this board. Unless, therefore, petitioner's proof herein is such as to enable this board to say *what ratio does exist* between the assessed valuations set out in the table under attack, and the true values of the properties, it must dismiss the appeal, whatever may be its opinion as to the possibility of the existence of a deviation between such true value and

the actual assessments. And, in this connection, it is unquestionable that the presumption is in favor of any action of the county board, in its revising and equalizing capacity (*Newton Trust Co.* v. *Atwood* (*Supreme Court,* 1908), 77 *N. J. L.* 141; 71 *Atl. Rep.* 110), with a consequent burden of proof resting upon any objector to its action.

The legislative provisions governing county boards of taxation, in respect of the function of equalization, are *R. S.* 54:3-17, 54:3-18 (*N. J. S. A.* 54:3-17, 54:3-18), which read as follows:

54:3-17. "Each county board of taxation shall annually ascertain and determine, according to its best knowledge and information, the general ratio or percentage of full value at which the real property of each taxing district is assessed according to the tax lists laid before the board. It shall prepare an equalization table showing the assessed valuation of the real property in each district, the ratio or percentage, if any, by which the assessed valuation should be increased or decreased in order to correspond to true value, and the true value of the real property within the district as determined by it. A copy of the table shall be mailed to the assessor of each district, and be posted at the court house, at least one week before the hearings provided for in section 54:3-18 of this title."

54:3-18. "The county board of taxation in each county shall meet annually on January twenty-fifth for the purpose of equalizing the assessments of real property between the several taxing districts of the county. At the meeting a hearing shall be given to the assessors and representatives of the governing bodies of the various taxing districts for the purpose of determining the accuracy of the ratios and true valuations of property as shown in the equalization table, and the board shall confirm or revise the table in accordance with the facts. The hearings may be adjourned from time to time but the equalization shall be completed before March tenth. At the first hearing any taxing district may object to the ratio or valuation fixed for any other district, but no increase in any valuation as shown in the table shall be made by the board without giving a hearing, after three days' notice, to the governing body of the taxing district affected."

These sections must be understood in relation to *R. S.* 54:4-35, requiring the several assessors to attend before the county board of taxation on January tenth and file with it their complete assessment lists. The county board then proceeds to prepare the equalization table (referred to in petitioner's argument as the preliminary table) under the directions specified in *R. S.* 54:3-17 (*N. J. S. A.* 54:3-17), and to mail a copy of it to each of the assessors on or before January 18th.

This procedure was not strictly followed in Essex county for the reason that completed duplicates of the taxing districts of Newark and Millburn were not filed with the county board within the time specified by the statute, and in the case of Newark, not until March 9th, or one day prior to the date designated in *R. S.* 54:3-18 (*N. J. S. A.* 54:3-18) for the completion of the full process of equalization by the county board. Therefore, the preliminary table sent out by the board was, perforce, incomplete in so far as the assessed valuations in Newark and Millburn were concerned. The table did specify the assessment totals in each of the other municipalities, including that of Montclair, and, in the case of each taxing district, did further recite that none of the assessed valuations were required to be increased or decreased by any percentage (in order to correspond to true value).

On the morning of March 9th, 1940, the city of Newark finally produced its assessment list, showing a 1940 figure for assessed realty in the amount of $604,858,345, as compared with its 1939 total of $654,687,280. Thereafter, on the same day, the county board adopted the table now under review, accepting and confirming, without any change, all of the lists of assessed real property valuations returned to it by the respective assessors. At the hearing before the county board on that day, counsel for petitioner sought to establish whether, and to what extent, the board had examined the lists returned by the assessors for the purpose of ascertaining whether they corresponded to true value. Petitioner was particularly interested in the return made by the town of Montclair, showing a decrease from the 1939 real property valuations, which were $83,185,900, to the 1940 total of

$74,864,600, and in the Newark figures above mentioned. Its counsel requested that the county board permit its secretary to be sworn as a witness, or in the alternative, that the members of the board make a statement for the record, or give testimony, as to what their investigation of the figures submitted had consisted of. The board ruled that it would not give such testimony, but did state specifically that the lists returned, including the questioned valuations in Montclair and Newark, were, in the opinion of the board, as founded upon its knowledge and information gained in hearings held in the past, and spot check investigations, correct and acceptable.

Petitioner argues that the failure of the county board to prepare and send to the assessors on January 18th, 1940, a preliminary equalization table, complete as to *all* of the taxing districts, deprived it of any jurisdiction to adopt a final table, and made its purported adoption of a table on March 9th, a nullity. It further contends that the refusal of the board to furnish the testimony or a statement of the character requested of it by petitioner on March 9th, was arbitrary and capricious, and that, for each of these reasons, the table should be set aside. We are of the opinion that neither of these contentions is sound.

It is of the most vital importance that *a final equalization table* be adopted by the county board of taxation prior to the expiration of the time fixed for that purpose by the statute, so that the machinery of estimation, apportionment, and distribution of county and state taxes for a given year shall be definitely and finally set in motion. *R. S.* 54:3-19; *N. J. S. A.* 54:3-19. The legislative scheme evinces such a purpose. Differences between amounts charged to taxing districts under the county equalization table and those resulting from a correction of the table upon appeal, do not affect the apportionment of county and state taxes for the current year, but are adjusted in the following year. *R. S.* 54:2-37; *N. J. S. A.* 54:2-37. The obvious helplessness of the Essex county board to compel the Newark and Millburn assessors to file their duplicates on time, and its consequent inability to prepare and distribute a timely preliminary equalization

table, did not deprive it of its right, or relieve it of its duty to adopt a table prior to March 10th. In *Hugg* v. *Camden* (*Supreme Court,* 1877), 39 *N. J. L.* 620, 623, the court said :

"* * * where a statute directs a person, in the discharge of a public duty, to do a thing at a certain time, without any negative words restraining him from doing it afterwards, or any expression from which such intent can be gathered, the naming of the time is but directory, and not a limitation of authority. While, therefore, the duty enjoined may be performed at a time subsequent to that named in the statute, and the action be valid, because the time is not of the essence of the act required to be done, and is not a condition precedent to its validity, yet the statute should be obeyed, and the duty performed at the time specified."

Petitioner's grievance at not having been served with a complete preliminary equalization table on January 18th can consist only in its lack of notice of the omitted valuations of Newark and Millburn, in sufficient time to make and argue before the county board any objection it might have had to their variation from true value, if any. Its right of appeal to this board from the table as adopted is a complete remedy in that behalf.

Nor has petitioner any just complaint with respect to the proceedings before the county board on March 9th. *R. S.* 54:3-18 (*N. J. S. A.* 54:3-18) provides that the hearing afforded to the several taxing districts before the county board shall be for the purpose "of determining the accuracy of the ratios and true valuations of property as shown in the equalization table," and that at the first hearing, "any taxing district may object to the ratio or valuation fixed for any other district," such objection to be determined after hearing, on notice to the district affected. Clearly these provisions made it incumbent upon the petitioner to offer proof of the true value of the real property assessed in Montclair and Newark, if it sought to establish that the ratables in those districts were assessed at less than true value. This it did not do. The statement by the county board that its adoption of the valuations as returned by the assessors was in conse-

quence of its opinion that such valuations were correct, based upon the knowledge and information gleaned by the board from hearings in the past and from spot check investigations, was a sufficient justification, *prima facie,* of its action, if indeed at all necessary. County tax boards are presumably intimately conversant with local real property valuations. See *State, Weehawken* v. *Roe (Supreme Court,* 1872), 36 *N. J. L.* 86 (at *p.* 88), where it was said of the local county boards of assessors, corresponding to the present county boards of taxation:

"Our law-makers have presumed that assessors in the discharge of their functions will become acquainted with the values in their county, and by an interchange of views, be able to ascertain approximately, not accurately, the relative valuations, so that no apparent injustice will be done to any one township. This is all that was intended to be secured by the provision in question. It shall appear to the board from the knowledge which each one possesses, aided by that derived from his associates, that there is inequality, that inequality may be removed, according to their best judgment, and nothing more. Before they can act at all, upon any duplicate, they must decide that the valuation contained in it is relatively less than the value of other property in the county, and then they correct it as to themselves shall seem just and proper. The act was designed to enable the board of assessors to remove, not arbitrarily to establish inequality, by permitting them to act in the premises without first having the sanction of their own judgment as a board, that a state of facts existed which authorized them to interfere at all."

We conclude, accordingly, that nothing that took place below, *ipso facto,* can justify our interference with the equalization table under appeal. It remains to consider whether any showing was made before this board which would warrant our substitution of a different equalization table for that adopted by the county board. The gravamen of petitioner's argument before this board is that the considerable reductions in valuations made by the assessors of Newark and Montclair in the year 1940, taken together with the substan-

tially unchanged aggregates of the other taxing districts, and the constancy of all of the municipal valuations, including that of Newark, from 1930 to 1939 (except for Montclair, where there was a reduction of approximately $16,000,000 in 1939) establish a *prima facie* case to the effect that either the Newark and Montclair valuations for 1940 are too low, or that those of the other municipalities are too high. In our view this conclusion is both a *non-sequitur* and irrelevant to the proper issues in an appeal of this type. It is irrelevant in that the statutes controlling this board in the matter enjoin upon it the single duty of determining, upon evidence adduced before it, in which case, if any, the aggregate assessed realty valuations of a particular taxing district, as confirmed by the county board, vary from the true value of the property, and by what percentage. Petitioner may not, upon the basis of mere conjecture or inference, pass on to this board the responsibility of determining the facts by independent investigation, where it fails to carry its burden of alleging and proving, by direct, competent, and persuasive testimony as to values, a variance between aggregate assessed values and true values, in one or more districts. *Newton Trust Co.* v. *Atwood, supra.*

And were it material to the issues, we do not conceive that the fact of the reductions in valuations in Newark and Montclair establish, *prima facie,* the conclusion that either the assessments in those taxing districts is below true value, or that those of the other municipalities are in excess thereof. The county board may well have considered that the reductions in Newark and Montclair had the effect of bringing previously pegged valuations of the past decade down to figures more consonant with present day depressed true values. And the county board may have felt, moreover, that undervaluations in West Orange and other Essex municipalities of past years, have now, by force of the economic depression in realty values, become true values. We do not know. The members of the county board were subject to subpoena at the hearing herein and could have been examined as to their knowledge and information. *Hoboken* v. *State Board of Tax Appeals (Supreme Court,* 1936), 14 *N. J. Mis. R.* 207; 183

*Atl. Rep.* 719; *Long Dock Co.* v. *State Board of Assessors* (*Supreme Court,* 1914), 86 *N. J. L.* 592; 92 *Atl. Rep.* 439. We expressly invited counsel for petitioner to call the county board members as witnesses in this connection, but he was unprepared to do so. In any event, there is a presumption in the first instance in favor of the estimations made by the assessors. *Estell* v. *Hawkins,* (*Supreme Court,* 1887), 50 *N. J. L.* 122, 125; 11 *Atl. Rep.* 265, and we do not believe that a *prima facie* case against the correctness of assessed valuations can ever be indulged in, without the presentation of specific testimony as to values, regardless of past assessment history. Each annual assessment of property for taxation is a separate entity, distinct from the assessments of the previous years. *United New Jersey Railroad and Canal Co.* v. *State Board* (*Supreme Court,* 1925), 101 *N. J. L.* 303; 128 *Atl. Rep.* 427. And see, with reference to an equalization based upon comparison with valuations for prior years. *State* v. *Hopper* (*Supreme Court,* 1892), 54 *N. J. L.* 544 (at *p.* 546); 23 *Atl. Rep.* 948.

We turn, thus, to consider what specific testimony petitioner adduced before this board bearing upon the ratio of the assessed valuations of any of the taxing districts in the county to true value. There was an utter absence of any proof whatever with respect to any of the districts other than Montclair. Apart from the weight and sufficiency of the evidence adduced as to Montclair, discussed hereinafter, it is obvious that no *relative* inequality of assessed valuations in the county could have been established by the petitioner. With respect to Montclair, petitioner first offered to prove what an investigation by the State Tax Department had disclosed as to the ratio between assessments and average sales prices, as disclosed by records of deeds of property in that taxing district, for the year 1927 and the succeeding years. This was excluded as remote and not relevant to the question of the ratio for the year 1940. Petitioner then produced another witness who had prepared a schedule based upon data in the office of the Montclair assessor, showing the consideration paid in the transfer for 482 parcels of realty in that town in 1938 and 1939, as reflected by the amount of revenue stamps on the

deeds and recitals as to mortgage incumbrances. Upon the basis of this information, the witness testified to an average ratio of seventy-nine per cent. between assessed valuations and sales prices. It has been judicially determined by the courts of this state that proof of the type described is of little or no probative force. In *Central Railroad of New Jersey* v. *State Tax Department* (*Court of Errors and Appeals,* 1933), 112 *N. J. L.* 5, 9; 169 *Atl. Rep.* 489, the Court of Errors and Appeals approved the refusal of this board to accept as evidence of the relationship of assessments to average values, scattered sales of active and desirable properties throughout the state. The absence of any proof as to "the great mass of taxable property," was held fatal. With specific reference to an exhibit purporting to represent a summary of written reports made to the State Board of Taxes and Assessment containing information pertaining to the considerations shown in deeds conveying realty, as recorded in the registers' and clerks' offices of several counties, the court said, after expressing doubt as to the admissibility of the exhibit as a matter of evidence (at *p.* 12):

"Even if *Exhibit P-1* can be considered, the unreliability of its contents to prove true valuation is obvious. Study of the exhibit indicates that the properties described in the deeds reported by the examiners attain a maximum of seven per cent. in but two counties; a minimum of one and seventy-eight one-hundredths per cent. in one county, and an average of four and sixty-eight one-hundredths per cent. of the total assessed value of the real estate for the twenty-one counties. There is nothing to show that the consideration stated in these deeds represents the actual consideration that passed or the true value of the property involved. Quite to the contrary it can be said that it is the common practice not to disclose the true consideration in deeds. See *Seefeld* v. *Chicago, Milwaukee and St. Paul Railway Co.,* 29 *N. W. Rep.* 904, to the effect that:

" '* * * On their face the railway company was a stranger to these conveyances, and was not bound by recitals therein of the consideration paid. Such recitals are nothing more than *ex parte* statement of the grantors and grantees

that the considerations named were paid and received for the respective lots. As between the parties thereto, each of these conveyances would be evidence of the consideration paid and received, because it is an admission of the fact by all the parties to it. But, it is not conclusive evidence. Either party may show that the true consideration was greater or less than that named in the deed, just as a party may always deny, explain or controvert his alleged admissions against his own interest unless they create an estoppel. * * *"

"In *Coulter* v. *L. and N. Railway Co.,* 196 *U. S.* (at *p.* 609), Judge Holmes, in discussing the figures obtained as in the instant case, stated:

" 'It is obvious that the accidental sales in a given year may be a misleading guide to average sales, apart from the testimony that some at least of the conveyances did not report true prices, yet they furnish the chief weapon of attack * * *.'

"It cannot be assumed that the amount contained in a deed represents the actual consideration in a given case or that it represents the fair and true value of the property in question. Experience teaches otherwise. Conveyances, including mortgages, between members of families, trades of properties, purchases made in an artificial market, distress selling and many other elements combine to render such evidence of little, if any, probative force."

The remarks of the court are as fully applicable to the purported proof here adduced bearing upon the Montclair valuations. No other proof having been offered by petitioner, we have no alternative than to find that the burden of proof resting upon it to establish a variance between the assessments filed with and approved by the county board, and the true value of the real property situate within any taxing district in the county, has not been sustained. *Borough of River Edge* v. *Bergen County Board of Taxation (State Board Tax Reports,* 1912-1934, *p.* 720). The appeal is therefore dismissed.

Judgment accordingly.